UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT R. KING,<br><br>                           Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br><br>                           Defendant. | Civil No.   09-cv-2420-MMA (POR)<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**[Document No. 13]**<br>**[Document No. 16]** |

**I. INTRODUCTION**

On October 29, 2009, Plaintiff Scott R. King ("Plainitff") filed a complaint pursuant to 42 U.S.C. section 405(g) requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner").  (Doc. 1.)  The Commissioner held Plaintiff failed to establish that the monthly payments he received from the Roberta J. King Trust ("Trust") were a bona fide loan, and thereby constituted income for purposes of calculating supplemental security income ("SSI") eligibility.

On August 2, 2010, Plaintiff filed a motion for summary judgment.  (Doc. 13.)  First, Plaintiff contends the ALJ's findings regarding Gloria Trumble, the trustee's, credibility are based on legal error and are not supported by substantial evidence.  (Doc. 13-1 at 7.)  Second, Plaintiff contends the ALJ made factual findings not supported by substantial evidence in the record in determining the monthly payments he received from the Trust were not a loan.  Id. at 8.

//

On August 30, 2010, Defendant filed a cross-motion for summary judgment. (Doc. 16) Defendant contends the ALJ properly found Plaintiff failed to support his contention that the monthly trust payments he received were the result of a written loan agreement between Plaintiff and the Trust, which would have exempted the loan from resource consideration and left his monthly SSI amount intact. (Doc. 16-1 at 3.) Specifically, Defendant contends Plaintiff failed to provide a copy of the alleged written loan agreement to the ALJ and to satisfy his burden of proving under the regulations and rulings that a bona fide loan existed. Id.

Neither Plaintiff nor Defendant filed an opposition to either Defendant's cross motion for summary judgment or Plaintiff's motion for summary judgment, respectively.

The Court finds the motions appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). For the reasons set forth herein, the Court RECOMMENDS Plaintiff's Motion for Summary Judgment (Doc. 13) be GRANTED and Defendant's cross motion for summary judgment (Doc. 16) be DENIED.

## II. PROCEDURAL BACKGROUND

Plaintiff is a recipient of SSI payments and also receives monthly payments from the Trust. (Administrative Record[1] 21-39, 120-22.) On November 22, 2005, the Social Security Administration ("SSA") assessed Plaintiff with an overpayment from November 2003 to December 2005, and reduced his future monthly SSI payments beginning in January 2006 because Plaintiff had exceeded his income eligibility for SSI. (AR 101-104.) After a January 23, 2006, denial on reconsideration (AR 120-122), Plaintiff filed a timely request for hearing before an administrative law judge on August 28, 2006. (AR 23-124.)

On February 15, 2007, Plaintiff, together with trustee Gloria Trumble and his counsel, testified before an ALJ. (AR at 204-23.) On May 28, 2008, the ALJ issued a decision finding that Plaintiff had failed to establish that the monthly payments he received from the Trust were a bona fide loan, and therefore, the payments constituted income for purposes of calculating SSI eligibility. (AR at 13-17.) On August 27, 2009, the Appeals Council denied Plaintiff's request for review. (AR at 2-5.)

---

[1] Administrative Record, hereinafter "AR."

## III. FACTUAL BACKGROUND

By way of background, in a prior decision issued on November 4, 2002, an ALJ found Plaintiff was overpaid SSI from February 1999 through May 2001 due to receipt of unearned income from the Trust in the form of direct cash disbursements as well as in-kind payments made by the trust for property taxes, property insurance, water, gas, and electricity. (AR at 14.) As set forth in this prior decision, "the applicable regulations make clear that...SSI is a needs-based program and that income and resources are considered in determining eligibility for benefits. Generally, the more income and resources an individual has, the lower the benefit payment amount and, if income or resource levels are too high, an individual will be ineligible for SSI altogether." Id.

At a November 2005 Supplemental Security Income review, the SSA verified that the Trust was paying $219.42 for Plaintiff's homeowner's association ("HOA") fees and $60.00 for his San Diego Gas and Electric Bill. (AR 13.) On July 31, 2006, the SSA determined that the Trust had made payments for Plaintiff's shelter expenses (including the HOA fees, electricity and gas) valued at $208.00 per month from November 2003 through October 2004 and valued at $218.00 per month from November 2004 to December 2005. Id. Because the trust disbursements were for shelter expenses, the SSA treated the disbursements as in-kind support and maintenance to Plaintiff and counted the payments as unearned income in Plaintiff's benefit calculation. Id. As of November 22, 2005, the outstanding overpayment was $13,768.20, and the SSA was recovering the remainder of the overpayment from Plaintiff's SSI payments in increments of $20.00 each month. Id. at 14.

At the February 2007 hearing regarding overpayment at issue in this case, Plaintiff's counsel did not dispute Plaintiff had been overpaid SSI from November 2003 to December 2005. (AR 14.) Rather, counsel acknowledged that payments from the trust for HOA fees, gas, and electricity were considered in-kind support and maintenance to Plaintiff. Id. Counsel also did not dispute the amount of the overpayment. Id. However, counsel argued that the circumstances that had previously led to overpayment were no longer present. Id. Counsel argued that the trust had stopped making the shelter payments for Plaintiff as of January 2006 and that Plaintiff's monthly benefit amount should be adjusted to take into account that Plaintiff had been making these payments out of his monthly SSI checks. Id. Counsel explained that Plaintiff's monthly benefits

were not only being reduced by $20.00 each month to recoup the overpayment, but that they were also being reduced due to in-kind support and maintenance payments the SSA believed the trust was still making for shelter expenses. Id.

At the hearing, Gloria Trumble, the trustee of the Roberta J. King Trust, testified that $20.00 was being taken from Plaintiff's monthly SSI check. (AR 14.) Further, she explained that Plaintiff's 2006 benefits were still being reduced for the shelter expenses that had been paid by the trust from November 2003 to December 2005 and that the shelter expenses received from the trust were valued at $207.66 per month. Id. at 15. According to both Ms. Trumble and Plaintiff, Plaintiff's gas and electric bill averaged about $50.00 per month and his HOA fees were about $250.00 per month. Id. Ms. Trumble also indicated that as of January 2007, Plaintiff had been receiving $648.44 in SSI. Id. In addition to the SSI, Plaintiff had also been receiving $200.00 per month from the trust so he could meet his expenses for shelter and food. Id. Counsel interjected that these payments were loans from the trust, which were expected to be repaid. Id. Ms. Trumble testified there is a written loan agreement to that effect. Id.

In order to determine whether the trust continued to pay for these shelter expenses in 2006 and whether the continued reduction in Plaintiff's benefit amount was warranted, the ALJ afforded counsel three weeks after the hearing to obtain bank statements relating to Plaintiff's payment of these expenses since January 1, 2006 and records from the trust to show the trust was not making these payments. (AR 15.)

Following the hearing, the ALJ received copies of the following: (1) statements from San Diego Metropolitan Credit Union for the Trust; (2) a 2006 expense register from the trust; (3) copies of statements from Union Bank of California for Plaintiff's account; (4) copies of checks from Plaintiff's Union Bank account for HOA fees; and (5) copies of the tenant ledger from Casa Dorada Condominiums/Keystone Inland Property Management. (AR 15.)

The copy of the trust register report showed deposits, checks, and withdrawals from the trust, including "loans from the trust" to Plaintiff amounting to about $200.00 per month. Id. Copies of Plaintiff's bank statements from Union Bank indicated that he paid his SDG&E bill from his account each month in 2006. Id. Further, copies of checks from this account showed Plaintiff paid his HOA

fees in April, May, June, July, August, September, October, November and December 2006. Id. at 15-16. As corroboration, a copy of the tenant ledger indicated that payments for about $230.40 were made each month. Id. Based on this information, the ALJ concluded Plaintiff paid for his gas and electric bill, as well as for his HOA fees, directly from his account.

After consideration of all the evidence, the ALJ concluded the SSA correctly determined the in-kind payments made by the Trust counted as unearned income in determining Plaintiff's eligibility for SSI, and consequently, Plaintiff was overpaid benefits from November 2003 to December 2005. (AR 16.) Further, the ALJ concluded Plaintiff failed to establish that a bona fide loan exists between him and the trust concerning the monthly payment of $200.00. Id.

In reaching these conclusions, the ALJ noted that Plaintiff did not contest the existence of overpayment or the amount of overpayment for the period from November 2003 to December 2005. (AR 17.) Further, although Plaintiff began paying the bills for his HOA fees, gas and electricity directly to his creditors in January 2006 due to a cash distribution from the trust of $200 each month, the ALJ held this did not alter the treatment of these transactions. Id. Specifically, the ALJ noted:

> In this case, no written agreement has been provided concerning the nature and terms of the loans between the claimant and the trust. Nor were the terms of the loans disclosed orally at the hearing. In fact, there is no evidence in the record concerning the terms of these loans. Nor is it clear from the record how the claimant would repay such loans from the trust based on his limited, fixed income. Rather, it appears that the funds were disbursed to him so that he could pay for his shelter expenses directly to avoid having the funds treated as unearned income in his benefits calculation. Hence, the undersigned finds no evidence to establish the existence of bona fide loans.

Id. at 16.

The ALJ stated regardless of whether Plaintiff paid his expenses directly to creditors with a subsidy from the trust each month or the trust paid these creditors, "the shelter expenses were in actuality paid by the trust. Hence, these shelter expenditures are still considered unearned income to the claimant." Id. at 17. Based on this analysis, the ALJ concluded there was no basis to recompute Plaintiff's benefits for the year 2006 due to his new method for paying his shelter expenses. Id.

### IV. DISCUSSION

**1.     Legal Standard**

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied by the SSA to seek judicial review of the Commissioner's final agency decision.

42 U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 2008). The Court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]" considering the record as a whole. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It means "'more than a mere scintilla but less than a preponderance[]'" of the evidence. Bayliss, 427 F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601). "'[T]he court must consider both evidence that supports and the evidence that detracts from the ALJ's conclusion . . . .'" Frost v. Barnhart, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

**2.   Analysis**

Plaintiff contends the ALJ's findings regarding the trustee's credibility are based on legal error and are not supported by substantial evidence. (Doc. 13-1 at 7.) Further, Plaintiff contends the ALJ made factual findings not supported by substantial evidence in the record in determining the monthly payments Plaintiff received from the Trust were not a loan. Id. at 8.

Defendant contends substantial evidence supported the ALJ's finding that no loan existed because Plaintiff failed to substantiate the existence of an alleged written and bona fide loan agreement. (Doc. 16-1 at 5-7.)

Among other factors, an individual is eligible for SSI if he is disabled and "has limited income and resources." See 20 C.F.R. § 416.1100. Income is anything the individual receives in cash or in kind that can be used to meet his needs for food and shelter. See 20 C.F.R. § 416.1102. The SSA provides that unearned income includes support and maintenance furnished in cash or in kind. See 42. U.S.C. § 1382(a)(2)(A); 20 C.F.R. § 416.1120, 416.1121. Agency regulations define in-kind support and maintenance as food, clothing, and shelter, including utilities, furnished to a SSI recipient. See 20 C.F.R. § 416.1121(h), 1130(b).

However, the regulations provide that the proceeds of a loan are not income. See 20 C.F.R. § 416.1103(f). Social Security Regulation (SSR) 92-8p provides guidance for determining when a loan is not considered income and when a loan is considered a countable resource under the SSI

program. SSR 98-8p states:

> 1. A loan means an advance from lender to borrower that the borrower must repay, with or without interest. A loan can be cash or an in-kind advance in lieu of cash. For example, an advance of food or shelter can represent a loan of the pro-rata share of household operating expenses. This applies to any commercial or noncommercial loan (between relatives, friends, or others) that is recognized as enforceable under State law. The loan agreement may be oral or written, as long as it is enforceable under State law.
>
> 2. Any advance an SSI applicant or recipient receives that meets the above definition or a loan is not income for SSI purposes since it is subject to repayment...
>
> 3. When money or an in-kind advance in lieu of cash is given and accepted based on any understanding other than that it is to be repaid by the receiver, there is no loan involved for SSI purposes.

The regulations further state that evidence must be obtained with respect to the existence of a bona fide loan agreement, and the burden of proof with respect to the bona fide nature of the loan is with the SSI recipient. Id. Under California law, "[a] loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." Cal. Civ. Code § 1912.

Here, the Court finds the ALJ made factual findings that are not supported by substantial evidence in the record. In determining Plaintiff failed to establish that the monthly payments he received from the Trust were a bona fide loan (thereby constituting income for purposes of calculating SSI eligibility), the ALJ noted Plaintiff did not provide the written agreement concerning the nature and terms of the loans between Plaintiff and the trust. (AR 16.) However, both testimony at the hearing and documentary evidence in the record demonstrate the existence of a loan between Plaintiff and the Trust. First, Gloria Trumble, the trustee, testified at the hearing that the money received by Plaintiff was a loan, which counsel confirmed. (AR 216.) The trustee also testified there was a written agreement to repay the loan. (AR 216.) Moreover, included in the list of withdrawals shown in the 2006 trust register report were "loan[s] from the trust" to Plaintiff amounting to approximately $200.00 per month.[2] (AR 144-145.) Therefore, although Plaintiff did

---

[2] The Court notes Plaintiff attached Promissory Notes to his Motion for Summary Judgment acknowledging receipt of checks in the amount of $200.00 from the Roberta King Trust, which state "This is considered a zero interest loan from the Roberta King Trust." (Doc. 13-1 at 11-24.) However, because these documents were not presented to the ALJ and therefore did not inform his decision, the

1  not submit the written loan agreement, the record contains evidence from both the donor and
2  Plaintiff that a loan, rather than a gift, was intended.  See Ceguerra v. Sec'y of Health and Human
3  Servs., 933 F.2d 735 740 (9th Cir. 1991); see also SSR 98-8p.
4     Further, the ALJ applied an improper legal standard in determining the requirements of a
5  valid loan contract.  First, the ALJ erroneously relied on the fact that Plaintiff did not provide the
6  written agreement detailing the nature and terms of the loan when he concluded Plaintiff failed to
7  prove the existence of a bona fide loan.  (AR 16.)  Neither the Social Security regulations nor
8  California law require Plaintiff to produce the written loan agreement.  See, SSR 98-8p; see also Cal.
9  Civ. Code § 1912.  Moreover, the ALJ never questioned the validity of the loan or asked for copies
10 of the written agreement at the hearing.  Rather, the ALJ requested that Plaintiff submit copies of
11 personal checks and bank statements showing he paid his creditors directly, as well as trust
12 documents to show the trust was not reimbursing Plaintiff.  (AR 218-221.)  Subsequent to the
13 hearing, Plaintiff submitted copies of all the documents the ALJ requested, including: statements
14 from San Diego Metropolitan Credit Union for the Trust; an expense register from the trust for 2006;
15 copies of statements from Union Bank of California for Plaintiff's account; copies of checks from
16 Plaintiff's Union Bank account paying his HOA fees; and copies of the Tenant Ledger.  (AR 140-
17 198.)  Included in the list of withdrawals shown in the 2006 register report were "loan[s] from the
18 trust" to Plaintiff amounting to approximately $200.00 per month.  (AR 144-145.)
19    Second, in concluding there was no evidence to establish the existence of bona fide loans, the
20 ALJ noted the terms of the loans were not disclosed at either the hearing or in the record.  (AR 16.)
21 The ALJ also stated it was not clear from the record how the claimant would repay such loans from
22 the trust based on his limited, fixed income.  Id.  Based on these observations, the ALJ concluded
23 that  it appeared that the funds were disbursed to Plaintiff so that he could pay for his shelter
24 expenses directly to avoid having the funds treated as unearned income in his benefits calculation.
25 However, according to California law, the failure to detail the nature and terms of a loan does not
26 show there was no contract.  See Cal. Civ. Code § 1610; Ceguerra, 933 F.2d at 739.  Moreover,
27 California law does not require a showing of how a borrower will repay a loan, but rather a showing
28

---

Court does not consider them in its analysis.

that the borrower will "return at a future time a sum equivalent to that which he borrowed." Cal. Civ. Code § 1912.

Third, the ALJ made no mention of the trustee's testimony in his decision. Gloria Trumble, the trustee, testified at the hearing that the money received by Plaintiff was a loan and that there was a written agreement to repay the loan. (AR 216.) Such testimony was corroborated by the 2006 trust register report which included in the list of withdrawals "loan[s] from the trust" to Plaintiff amounting to approximately $200.00 per month. (AR 144-145.) As explained in Varney v. Sec'y of HHS, 859 F.2d 1396 (9th Cir. 1988), if an ALJ has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds. Here, the ALJ did not find that any of the testimony of Trumble, the only witness, lacked credibility. Following the rule of Varney, and because the ALJ found no reason to doubt Trumble's testimony, the Court hereby accepts the testimony as credible and considers it along with the confirming documentary evidence.

Based thereon, the ALJ committed legal error in his determination there was no loan and his decision is not supported by substantial evidence. Accordingly, the Court RECOMMENDS Plaintiff's motion for summary judgment be GRANTED and Defendant's cross-motion for summary judgment be DENIED.

Further, because the record is sufficiently complete to resolve Plaintiff's contention that there was a valid and enforceable agreement to repay the trust, this Court holds there is no need to further develop the record. Accordingly, there is no reason to require a remand to determine whether there was a valid agreement to repay. Hammock v. Bowen, 879 F.2d 498 (9th Cir. 1989.)  Therefore, the Court RECOMMENDS reversing the Secretary's decision to reduce Plaintiff's benefits and RECOMMENDS the case be remanded to the Social Security Administration solely for a re-calculation of Plaintiff's SSI benefits.

## V. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court RECOMMENDS Plaintiff's Motion for Summary Judgment (Doc. 13) be GRANTED and Defendant's cross motion for summary judgment (Doc. 16) be DENIED. Accordingly, the Court RECOMMENDS reversing the Secretary's decision to reduce Plaintiff's benefits. However, the

1  Court RECOMMENDS the case be remanded to the Social Security Administration <u>solely</u> for a re-
2  calculation of Plaintiff's benefits.
3        This Report and Recommendation of the undersigned Magistrate Judge is submitted to the
4  United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §
5  636(b)(1) (2007) and Local Rule 72.1(d).
6        IT IS HEREBY ORDERED that **no later than February 10, 2011**, any party may file and
7  serve written objections with the Court and serve a copy on all parties. The document should be
8  captioned "Objections to Report and Recommendation."
9        IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no**
10 **later than ten days** after being served with the objections. The parties are advised that failure to
11 file objections within the specified time may waive the right to raise those objections on appeal of
12 the Court's order. <u>Martinez v. Y1st</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).
13       **IT IS SO ORDERED.**
14 DATED: January 27, 2011

                                            *Louisa Porter* (signature)
                                            LOUISA S PORTER
                                            United States Magistrate Judge